**OKAW DRAINAGE DISTRICT OF CHAMPAIGN & DOUGLAS COUNTY, IL, a municipal corporation, Plaintiff,**

v.

**NATIONAL DISTILLERS AND CHEMICAL CORPORATION, a foreign corporation, Defendant.**

**No. 84–3445.**

United States District Court,
C.D. Illinois,
Springfield Division.

June 12, 1990.

Brian L. McPheters, Champaign, Ill., for plaintiff.

Harlan Heller, Mattoon, Ill., James F. Lemna, Camargo, Ill., for defendant.

## OPINION

RICHARD MILLS, District Judge:

A contract case.

This cause is currently before the Court following remand by the Seventh Circuit Court of Appeals for the purpose of further factual findings and conclusions of law regarding Count I of the complaint alleging breach of contract. (Our judgment on Count II of the complaint seeking injunctive relief was affirmed).

This opinion and order constitutes our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). Any finding of fact properly deemed a conclusion of law and any conclusion of law properly deemed a finding of fact are to be so considered.

We were surprised by several of the circuit court's comments contained in the opinion remanding this case. *Okaw Drainage Dist. v. National Distillers & Chemical Corp.*, 882 F.2d 1241 (7th Cir.1989). As the circuit court has recently recognized, "[d]istrict Courts and Courts of Appeals must always work in a spirit of cooperation." *Jones v. Jones Bros. Const. Co.*, 888 F.2d 1215, 1216 (7th Cir.1989). Several of the circuit court's gratuitous comments in its opinion remanding this case belie this statement. Some of these comments reflect a misconception of this Court's concluding remarks while others are simply incorrect. We will attempt to remedy these misconceptions and errors as well.

### I. Findings of Fact

The Plaintiff, Okaw Drainage District of Champaign and Douglas Counties, Illinois, is a municipal corporation duly organized under the Illinois Drainage Code, Ill.Rev. Stat. ch. 42, ¶¶ 1–1 to 12–24. The Defendant, National Distillers and Chemical Corporation (National Distillers) is a foreign corporation organized under the laws of the State of Virginia with its principal place of business in New York City. The Defendant owns and operates the United States Industrial Chemical Corporation facility at Tuscola, Illinois. Defendant is successor in interest and assumed the liabilities of National Petro Chemical Corporation.

The drainage district is responsible for maintaining a 14–mile stretch of the Kaskaskia River. The United States Industrial Chemical Company (U.S.I.), a division of National Distillers, owns land along the river north of the district and has for many years been pumping millions of gallons of water per day from wells on that land into the river. Below the drainage district's southern boundary, where National Distiller's Tuscola plant is located, the company draws from the river an amount of water approximately equal to the amount it pumps in upstream, uses some of the water in the plant operations, and sells the rest as drinking water to nearby towns.

In 1951 the drainage district and National Distiller's predecessor in interest entered into a contract whereby, in consideration for the drainage district's permission for the company to use the district's ditch, the company was obligated to maintain the ditch and pay an annual fee for its use. The contract as originally drafted and as amended in 1965 sets forth the company's maintenance obligations in great detail. Pursuant to the contract, the company was obligated to conduct dredging operations of the district's main channel as either a single operation each ten year period or as a continuing yearly program of clean-out work during each ten year period of time. In addition, the company was obligated to conduct annual spraying or clearing operations of the bottoms, side slopes, and uncultivated berms of the ditch to a distance of 15 feet outward on each side from the top of the side slopes.

Beginning in 1978 Defendant began a yearly program of spot dredging as needed to remove silt and sand bars from the district's main ditch. In addition, Defendant hired Illini Pest Control to spray the river banks to control the growth of trees and brush. However, in 1980 Defendant stopped spraying the ditch because of restrictions by the Environmental Protection Agency on the use of herbicides. Thereafter, Defendant employed Morris Construction Company for the years 1980, 1981, 1983, and 1984, to manually cut the trees and brush along the river banks. Joe Rittenhouse, a contractor, worked for the company during 1986–87 dredging the channel. In addition, Defendant's employees from the Tuscola plant assisted in the clearing operations periodically.

Shortly after filing this lawsuit, the drainage district exercised its contractual right to terminate the contract effective in 1987. Thereafter, the company stopped maintaining the ditch and the district took over responsibility for maintenance.

This cause came on for a three day bench trial during August 10–12, 1988, culminating in a decision in favor of the Defendant on the breach of contract claim and the denial of injunctive relief. At trial, Wilbur Clark, Sr., a commissioner for the district for 38 years, testified that the company never conducted a total dredging or clear cutting operation of the main ditch. James Clapper, a commissioner for 14 years, also testified that he was aware of no demand by the company prior to the suit being filed that the district repair the drain tiles and head walls which were in a state of disrepair and contributed to the problem of silt deposits in the ditch due to erosion.

Don Wauthier, an agricultural engineer employed by Berns, Clancy & Associates, performed an extensive evaluation of the district's main ditch during the summer of 1986. Mr. Wauthier testified that approximately 30 of the 200 tile outlets and head walls were in a state of disrepair. Also, the main ditch contained approximately 100,000 cubic yards of sediment above the original 1952 measurements. In addition, Mr. Wauthier characterized the brush along the sides and berms of the ditch by stating that approximately 19½ miles were lightly covered with brush (occasional tree or bush); 6 miles covered with medium brush (6–8″ diameter trees); and 1½ miles were covered with heavy brush (12″ diameter trees). Mr. Wauthier indicated in his report that the district's ditch was reasonably well maintained.

The Defendant introduced the deposition of Robert Morris, a contractor who worked on the district's main ditch. Mr. Morris testified that it was necessary to wait until the fall harvest was over before conducting dredging operations in order to avoid damaging crops. In addition, Mr. Morris indicated that some farmers who owned land along the ditch objected to trees being cut because they would fall into the cornfields.

Joe Rittenhouse, a second contractor who worked on the district's ditch, testified for the Defendant that the river constantly changes and sandbars can form and disappear on a monthly basis. Charles Danner, a civil engineer, performed an engineering study of the ditch during 1985–86 and discovered little or no silt above the 1952 designations. John Guillou, a hydraulic engineer, testified that the slope of the Kaskaskia River is relatively flat through the

district and that the report prepared by Mr. Danner showed the river to be in as good a condition as the original 1952 specifications. Mr. Guillou further testified that annual spot dredging is generally more effective that decennial dredging because of the river's fluid nature and that if the Berns, Clancy & Associates report were accepted as accurate, only 40,000 cubic yards of silt would have to be removed from the river to meet the 1952 specifications.

At the conclusion of all this testimony, and after reviewing all of the exhibits and photographs submitted by the parties, this Court held that the Plaintiff had failed to prove by a preponderance of the evidence that the Defendant's actions violated the contract.

## II. Conclusions of Law

The circuit court began its opinion with the statement this case "brings before us something not often encountered by a federal appellate court in Illinois—a dispute over water rights." *Okaw Drainage Dist. v. National Distillers & Chemical Corp.*, 882 F.2d 1241, 1243 (7th Cir.1989). This is the first misconception of which we spoke. The doctrine of "water rights" is defined as "[a] legal right, in the nature of a corporeal hereditament, to use the water of a natural stream or water furnished through a ditch or canal, for general or specific purposes, such as irrigation, mining, power, or domestic use, either to its full capacity or to a measured extent or during a defined portion of time." *Black's Law Dictionary* 1427 (5th ed. 1979). This case actually involves a dispute between a drainage district and a corporation which raises questions of contract law—it in no way involves any questions regarding the parties' respective rights to water.

The circuit court also informed us that this is not an admiralty case. This comment was prompted by our statement, made while discussing the district's request for an injunction prohibiting National Distillers to continue pumping water into the Kaskaskia, that without the contract lending legality to the pumping of the water we could be faced with a new admiralty question. We are fully aware, as is the circuit court, that admiralty jurisdiction depends upon the navigability of the body of water at issue and involves federal, as opposed to state, law. The circuit court's comment was unnecessary and serves only to illustrate, as does our own prior paragraph, the futility of courts seizing on minor and irrelevant errors found in their colleagues' opinions.

The circuit court also chastised us for leaving them to "grope in the dark" by failing to resolve the conflicts in the evidence and specifically find the facts. *Id.* at 1244. Our oral conclusions, findings and opinion—given from the bench at the end of the bench trial—did specifically resolve these conflicts and we will cite to the transcript within this opinion to demonstrate that much of what we do now has already been done.

■ The question presented by this case is whether National Distillers breached the contract with the Okaw Drainage District. But we cannot answer this question by reading the contract in a vacuum. When determining the intention of the parties to a contract, a court may consider the circumstances which existed when the contract was made. It may also consider the nature of the contract, its subject matter and the apparent purpose of entering into the contract. *American Fletcher Mortgage Co. v. Cousins Mortgage & Equity Investments*, 623 F.2d 1228, 1237 (7th Cir. 1980). In the case at bar we are dealing with a contract entered into 36 years ago. (Tr. 623) The contract, as is the case with most contracts, was designed to benefit both parties. (Tr. 623).

■ A drainage district is obligated to the landowners of the district to provide an adequate outlet for the drainage of their lands and to maintain the ditches of the district. Such services are essential in the relatively flat areas of Central Illinois to assure that the crops will mature properly. National Distillers agreed to undertake the maintenance responsibility for the district's main channel in exchange for the district allowing the company to use the ditch as a conduit for the well water. The essential

purpose underlying the contract was the maintenance of the main ditch in such a manner which provided for the free flow of the water and adequate drainage of the surrounding land.

The district introduced an engineering report prepared by Berns, Clancy & Associates which contained numerous photographs of the ditch taken in 1985. These photographs indisputably establish that the main ditch contained a few sand bars and had some trees and brush along the banks within 15 feet of the ditch. (Tr. 624). This evidence does not dispose of the case because the fact that a party fails to comply with every duty imposed by a contract, if read literally, does not establish that the contract has been breached. We must examine both the purpose of the contract and the conditions under which it was performed. Don Wauthier, an agricultural engineer who assisted in the preparation of the Berns, Clancy report, testified that of the 28 miles of river bank within the district's maintenance responsibility, 19½ miles were lightly covered with brush, 6 miles were covered with medium brush, and 1½ miles were covered with heavy brush. Mr. Wauthier also testified that his preliminary report contained the statement that the district's ditch was reasonably well maintained with respect to brush. In addition, there was testimony relating to the refusal of some of the landowners along the ditch to permit the cutting of brush or trees. (Tr. 625).

As noted previously, the purpose of the contract at issue in this case was to maintain the ditch in such a way as to provide an unobstructed channel for the water. Not a single witness testified to having ever observed the water being obstructed such that drainage of the surrounding lands was impaired. Compare the contract at issue to a similar contract under slightly different circumstances. If the contract at issue in this case was for the landscaping of a state park, the purpose would obviously be aesthetical and thus even minor deviations from the terms of the contract could result in the contract's breach. In the case at bar, the essential purpose of the contract was carried out irrespective of the minor breaches regarding the clearing of the trees and brush within the 15 foot zone along the river bank.

Turning to the company's obligation to conduct dredging operations along the district's main ditch, the same analysis applies. While both the Plaintiff and the Defendant agree that the ditch contains some silt deposits (although they disagree over exactly how much), neither side established that these silt deposits interfered with the water's flow. In addition, a drainage ditch or river channel is fluid and constantly changing as erosion carries silt and soil into the channel. (Tr. 628). Therefore, at any one time the district's channel will contain some deposits of silt. The Defendant employed Morris Construction Company and Joe Rittenhouse to dredge the channel from 1980 through 1987. (Tr. 624–25). These individuals removed the sand bars as they formed on a yearly basis. Mr. Rittenhouse testified that a river such as the Kaskaskia changes constantly and sand bars can appear and disappear on a monthly basis. In addition, there was substantial testimony relating to the district's failure to maintain the head walls and tile outlets along the river bank which contributed to the deposit of silt and erosion into the district's channel. (Tr. 629). The task of dredging the ditch was further complicated by the necessity of waiting until the growing season had ended to move the equipment onto the river's banks.

■ We stated at the conclusion of this trial that part of the problem between the parties resulted from the district's failure to notify the Defendant of the specific problems with the performance of the contract and allow a reasonable time for the Defendant to correct the problem. This duty to notify the Defendant can be found in paragraph 13 of the contract which states that "nothing herein shall be construed as relieving the commissioners of the district of their duties to the landowners." Therefore, the commissioners were ultimately responsible to the landowners to ensure that the ditch was properly maintained.

464

This brings us to the circuit court's final misconception.

The circuit court stated that we disregarded the law and acted as a medieval Lord Chancellor of England in an attempt to do more perfect substantive justice. *Okaw Drainage Dist.*, 882 F.2d at 1245. This comment was prompted by our statement that the parties should have been able to settle this dispute without expending large sums of money for attorneys and expert witnesses. As experienced trial judges realize, ofttimes parties will file a lawsuit rather than attempting to sit down with the opposing side and work out their differences. This was such a case. If the district and National Distillers had used the resources they expended for lawyers and experts to maintain the district then the main ditch of the Okaw district would be in pristine condition today. Although the district lost this suit, the real losers are the farmers who depend on the district for their livelihood.

Keeping in mind the underlying purpose of the contract at issue in this case we must conclude that the dredging and brush clearance performed by National Distillers was in conformance with the contract. Therefore, we find that Plaintiff has failed to meet its burden of proof to establish that Defendant breached its obligation under the contract.

*Ergo*, we find in favor of the Defendant and against the Plaintiff.